# United State District Court
# for the District of Rhode Island

United State of America

Vs.

Felipe C. Almonte
dob: 5/26/68

**CR No. 98-64-ML**

before Honorable Judge Mary Lisi

## MOTION TO ALLOW APPEAL OF DENIAL TO RESTRAIN AND EXCLUDE DNA COLLECTION (extend time) Ineffective Assistant of Counsel and Due Process

Petitioner, Felipe C. Almonte, comes before this Honorable Court to request permission to appeal his motion to exclude/restrain DNA testing and samples collection by the Bureau of Prisons, US Probation dept., and the US Attorney General Office. In support of this petition He states the following:

1. This case was in the First Circuit Appleals court and was sent back to determine the reason why the notice of appeal was filed out of time.

2. A petition was originally file on/about 9/13/2006. The District Court never notified petitioner what happened with the motion either by mail or by calling petitioner. A telephone # was provided to the District Court on the filing itself. Petitioner became award of denial months later when he was told about it by his probation Officer – Clara King.

3. Another motion for reconsideration was filed with the District Court alleging old and new claims. In addition, a separate motion to notify Petitioner by mail of outcome of the motion was filed. Here the District Court notified Petitioner by mail, but *failed to advised* him that District Court Rules required appeals to be made within specific amount of time.

5. The Motion was filed *Pro-se.* Petitioner is not a professional Lawyer and can not be expected to know every court rules. At the very least this is inefficient Assistance of of Counsel ( his own).

*Wherefore;* petitioner request access to this court (under due process) to go on his way to the First Court of Appeals to assert his rights allowed to him by the Constitution.

Felipe C. Almonte, Pro-se
190 Althea st
Prov. RI 02909

DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v. CA 98-064 ML

FELIPE ALMONTE

## ORDER

Petitioner/Appellant has filed a Notice of Appeal, however, that notice was not timely filed. Petitioner/Appellant is directed to advise this Court of any reason he has as to why he did not file his Notice of Appeal within the ten days of April 3, 2007. Petitioner/Appellant shall file his response to this Order on or before May 31, 2007.

SO ORDERED:

Mary M. Lisi
*Chief United States District Judge*
May 10 , 2007

# For the First Circuit

No. 07-1637

UNITED STATES,
Appellee,

v.

FELIPE ALMONTE, a/k/a Carlos E. Velez,
Defendant-Appellant.

**ORDER OF COURT**

Entered: May 1, 2007
*Pursuant to 1st Cir. R. 27.0(d)*

Upon review of the record in this case, it appears that this appeal should be dismissed because the notice of appeal, filed in CR No. 98-00064 (D. R.I.) on April 19, 2007 from the order that entered on April 3, 2007, is late. See Fed. R. App. P. 4(b) (notice of appeal in criminal case must be filed within ten days of judgment or order appealed from).

The notice of appeal, however, was filed within the thirty days immediately following that ten-day period. See Fed. R. App. P. 4(b). The district court, upon a showing of excusable neglect or good cause, may enlarge the time for filing a notice of appeal filed within that thirty-day period. Accordingly, we transmit the notice of appeal to the district court for a ruling whether the district court will enlarge the time for filing an appeal and will consider this notice of appeal timely filed. Copies of the district court's decision shall be forwarded to this court forthwith.

By the Court:
Richard Cushing Donovan, Clerk

MARGARET CARTER
By: ______________________
Chief Deputy Clerk

[Certified Copy: Honorable Mary M. Lisi,
David DiMarzio, Clerk, U.S. District Court for the District of Rhode Island]
[cc: Felipe Almonte, Donald Lockhart, AUSA]

**United State District Court**
**For the District of Rhode Island**

United State of America

Vs.

Felipe C. Almonte
dob: 5/26/68

**CR No. 98-64-ML**
before Honorable Judge Mary Lisi

**PETITION TO EXCLUDE DNA TESTING**
**AND TEMPORARY RESTRAINING ORDER**
***new claim under 4th amendment***

Petitioner seeks to exclude DNA testing and samples collection by the Bureau of Prisons, US Probation dept., and the US Attorney General Office; and a temporary restraining order. In support of this petition, he states the following in his memorandum of law (enclosed).

Felipe Almonte
190 Althea street
Providence, RI 02909

1

**United State Court of Appeals for the District of Rhode Island**
**&United State District Court**
**Memorandum**
**US vs. Felipe Almonte**
**Cr. No. 98-64-ML**
(5 pages)

Petitioner seeks to exclude DNA testing and samples collection by the Bureau of Prisons, US Probation dept., and the US Attorney General Office; and a temporary restraining order. In support of this petition, he states the following in his memorandum of law (enclosed).

*This case has been in the First Circuit Appeal's Court to preclude the Government* from extracting blood from petitioner on other grounds. The Government stated, in their brief to the Court of Appeals, that petitioner in District Court never raised a 4th amendment claim. Petitioner is now then making the claim.

Congress passed the DNA testing requirement in/about 2002 for cases covering Petitioner conviction. **Title 42 U.S.C. $14135a(a)(5).** Petitioner was convicted in 1998 on narcotic violations.

.

**DISCUSSION**

**Applicability of the Fourth Amendment**

The Fourth Amendment extends constitutional protection to the individual "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and concomitantly provides that this right "shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.const. amend. IV.

That Fourth Amendment protection attaches to DNA extraction is without dispute. See Katz, 389 U.S. at 361. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989). The first expectation of privacy concerns the physical penetration of the person to extract the blood. The second expectation is implicated when the blood is tested and the information contained in DNA is revealed. The Supreme Court, in Skinner, recognized that the taking and testing of a blood sample constitutes ***two separate searches*** when it stated, "[t]he ensuing chemical analysis of the [blood] sample to obtain physiological data is a further invasion of the tested employee's privacy interests." Id. There is little doubt that both searches invade an expectation of privacy and implicate the Fourth Amendment. The taking of a blood sample constitutes a "'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny." See Cupp v. Murphy, 412 U.S. 291, 295 (1973) (citing Terry v. Ohio, 392 U.S. 1, 24-25

(1968)). The Supreme Court, in Schmerber v. California, addressed this issue directly and found that the compelled administration of a blood test falls within the reach and protections of the Fourth Amendment. 384 U.S. 757, 767 (1966). Any forced extraction of blood, therefore, invades one's expectation of privacy in bodily integrity, and its reasonableness must be adjudged under a Fourth Amendment analysis.

The status of a convicted criminal does not affect the threshold question whether the Fourth Amendment initially attaches. Johnson v. Quander, 440 F.3d 489, 493 (D.C. Cir. 2006). Though courts often speak of a diminished expectation of privacy in such information for one convicted of a crime, the weight of that status as a factor occurs in the context of a Fourth Amendment balancing test, specifically on the degree of intrusion suffered. id.

The modern analysis starts with the premise that "[t]he touchstone of the Fourth Amendment is *reasonableness*." Knights, 534 U.S. at 118. Reasonableness, under this framework, is determined by examining the totality of the circumstances. Samson, 126 S. Ct.at 2197. This requires a balancing "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 534 U.S. at 119 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).

**Exceptions to the General Fourth Amendment Standard**

The general balancing test for reasonableness grows out of an exception to the accepted Fourth Amendment standard for administrative searches. The Supreme Court recognized this exception for situations where a governmental search was *incompatible with traditional* probable cause concepts requiring individualized suspicion. See Camara v. Municipal Court of San Francisco, 387 U.S. 523, 536-38 (1967). For example, the Supreme Court, in Camara v. Municipal Court of San Francisco, held that area inspections seeking to enforce promulgated housing codes are reasonable when conducted *with a warrant* despite lacking traditional individualized suspicion. *Id.* at *538-39*. The Supreme Court recognized that individualized suspicion would be impracticable and stated that "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." Id. at 536-37. On one side of the balance the Court weighed the governmental interest in conducting the housing code inspections. See id. at 535. On the other side, the Court looked to the intrusion that resulted from such a search. See id. at 538-39. The Supreme Court weighed this balance in favor of the administrative search while stressing the importance of the administrative regulations that *limited* the discretion of the governmental official. See id. at 538. In such cases, the administrative regulations stand in the place of probable cause. See id.

Initially, as in Camara, warrants were required for these administrative searches unless some exigency was present. See,e.g., id. at 539-40. Over time, however, the Court began dispensing with the warrant requirement in situations where obtaining a warrant could

inhibit the inspections, again relying on the existence of sufficiently defined regulations to provide an adequate substitute for the particularity requirements of a warrant. See, e.g., Donovan v. Dewey, 452 U.S. 594, 602-03 (1981) (upholding warrantless inspections required by the Mine Safety and Health Act); United States v. Biswell, 406 U.S. 311,317 (1972) (upholding warrantless inspections required by the Gun Control Act of 1968).

In addition to the need for discretion-limiting regulations, the Supreme Court has also required that the primary purpose of such searches to be **something other than general crime control**. See City of Indianapolis v. Edmond, 531 U.S. 32,48 (2000) (holding a police checkpoint to interdict narcotic traffic invalid because the principal purpose of the checkpoint was to detect evidence of criminal wrongdoing). Despite these limitations, the Supreme Court has expanded the administrative search rationale to include border searches, United States v. Martinez-Fuerte, 428 U.S. 543 (1976), drunk driving checkpoints, Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990), and, by implication, airport searches, see Chandler v. Miller, 520 U.S. 305, 323 (1997).

**Special Needs Exception**

A subcategory has evolved from the administrative search rationale that is often denominated the "special needs" exception. Justice Blackmun in a concurring opinion in a high school search case first used the term "special needs" when he spoke of an exception applying where "special needs, *beyond the normal need for law enforcement*, make the warrant and probable-cause requirement [sic]impracticable." New Jersey v. T.L.O., 469 U.S. 325, 351 (1985) (Blackmun, J., concurring); see Edmond, 531 U.S. at 54 (Rehnquist,C.J. dissenting) ("The 'special need' doctrine . . . is an exception to the *general rule that a search must be based on individualized suspicion of wrongdoing.*").

The "special needs" exception is often invoked as a corollary to the administrative search exception either to validate a general suspicionless and warrantless search or in specific situations where a search is required but obtaining a warrant would be impracticable. See Vernonia Sch. Dist. v. Acton, 515 U.S. 646, 663-65 (1995) (upholding suspicionless and warrantless drug testing because it provides an administrative process with a minimal amount of discretion); Schmerber, 384 U.S.at 770-71 (holding a warrantless blood test reasonable due to blood's **rapid loss** of its alcohol content). For example, the Supreme Court, in New Jersey v. T.L.O., stated, "The warrant requirement, in particular, is unsuited to the school environment:requiring a teacher to obtain a warrant . . . would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." 469 U.S. at 340.

These special needs categories have occasioned warrantless Fourth Amendment searches based upon either no individualized suspicion or suspicion less than the traditional probable cause standard in situations such as public school searches, id. at 340, public employee searches, O'Connor v. Ortega, 480 U.S. 709, 721-25 (1987) (plurality opinion), and, as discussed further below, searches of people on probation, Griffin v. Wisconsin, 483 U.S. 868, 876 (1987). The "special needs" exception — just as in the case

with the broader category of administrative searches -- must serve a primary purpose ***separate*** from the general interest in crime control. See Ferguson v. City of Charleston, 532 U.S. 67, 79-80 (2001) (holding a policy that required urine testing of maternity patients invalid because its primary purpose was the use of law enforcement to coerce the patients into substance abuse treatment). In addition to this requirement, the "special needs" exception requires a governmental purpose narrowly tailored to the means used to effectuate that purpose. Skinner, 489 U.S. at 629-30; National Treasury Employees Union v. Von Raab, 489 U.S. 656, 680-81 (Scalia, J., dissenting). For example, in Skinner v. Railway Labor Executives, the Supreme Court upheld drug tests immediately following an accident due to the demonstrated nexus between the safety of railroad operations and drugs and alcohol. See Skinner, 489 U.S. at 629-630. Justice Scalia, in his dissent in National Treasury Employees Union v. Von Raab, highlighted the nexus requirement by distinguishing Skinner. National Treasury Employees Union, 489 U.S. at 680-82 (Scalia, J., dissenting). In National Treasury Employees Union, the contested search involved urine testing of Customs Service employees to protect the integrity of the agency by discharging employees who, through their own drug use, would allegedly be unable fully to perform their duty to interdict narcotics. Id. at 682. Justice Scalia argued that the governmental purpose provided was too generalized and ***speculative*** to find the drug testing reasonable. See id. at 684. Thus, when operating outside the warrant requirement, a "special needs" search must be narrowly tailored to achieve a legitimate purpose. See Delaware v. Prouse, 440 U.S. 648, 659 (1979) (holding that random spot checks were not narrowly tailored to the purpose of ensuring an adequate amount of insurance coverage).

**conclusion:**

A person on supervised released 4th amendments rights are not completely extinguished. supervised release is an *imposed* sentenced; not something probationer agreed on. Even a prisoner, who has no legitimate expectation of privacy in his cell, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), retains an expectation of privacy in his body unless there is reasonable cause to violate his bodily integrity and a legitimate penological interest in doing so. *See Tribble v.Gardner*, *860 F.2d 321, 325 (9th* Cir. 1988) (stating that digital rectal searches of prisoners must be justified by legitimate penological need). The expectation of privacy of a parolee, who is released to live at home, in preparation for reintegration into society, is even greater. *See Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992) (stating that the constitutional rights of parolees "are even more extensive than those of inmates").

DNA collection and testing requires *TWO* separate searches ( 1st., the forced taking of blood samples and 2nd the search on the CODIS computer) voiding the reasonable requirement of 4th the amendments. If two searches is considered reasonable for the same circumstances today, tomorrow it will be ten searches for the same thing on the same day; then pretty soon the police and the Government will be living in our own houses and bedrooms. Wasn't this one of the reason for the American Revolution?. There is no exigency circumstances to not required a warrant for a DNA search, DNA can not be hidden, or destroyed . It will be here as long as I live and thereafter. DNA does not tells

the probation officer if probationer committed a crime. It requires further testing. Petitioner was convicted of narcotic violation having nothing to do with a physical violent crime like rape or murder. DNA does not attaches to a narcotic transaction to have a deterrence effect on probationer. It is nothing more than speculation at bests that probationer will be deterred of another narcotic sale because of DNA. See US v. Stewart No. 07-1245.(D. Mass)& NO. 05-10062-WGY

The "special need" carved out of the 4th amendment does not apply here for reason stated above and because DNA collection is for police investigation something that the Supreme court has shuned on. see discussion above. In fact the DNA collected by the Government is not merely "Junk DNA", the Government is conducting mass searches and using DNA in the CODIS system to find out if other members of the family has committed crimes from DNA markers. See **The Herald News**, may *2007*. A motion will follow on this issue in future. The other reasons stated by the Government to justify intrusion into individual rights is to let "innocent people go free". If you know that they are in fact innocent, then let them go.

**Temporary Restraining restraining order:**

This issue has never been decided in the First Circuit Court of appeals. Motions have been granted on this matter in the District Courts of Mass. Although the First Court of appeals is not bound by decision made in other Circuits, DNA collection initially has been turned down in other circuits. See Kincade (9th Circuit held DNA in violation of the 4th amendment, only to have it overturn by another three panel Judges.). This issue is still *in fux*. *US v. Kincade, No. 02-50380, D.C. No. CR-93-00714-RAG –01.*

**United State District Court**
**For the District of Rhode Island**

United State of America
Vs.

Felipe C. Almonte
dob: 5/26/68

**Cr. No. 98-64-ML**
before Honorable Judge Mary Lisi

*** IN CASE OF DENIAL ***

**Notice of Appeal**

Petitioner, Felipe Almonte, hereby appeals the denial of his petition to extend/allow appeal of his motion to exclude DNA and his motion to reconsider motion to exclude DNA that was before the Appeals Court and was sent back because of untimely appeal notice. Petitioner also appeals the denial to exclude DNA on 4th amendments ground.

Respectfully submitted,

Felipe Almonte, Pro-se

## Certification

I, Felipe Almonte, hereby certify that a true copy of this motion was sent to the US Attorney General's office at 50 Kennedy Plaza, Fleet bldg. Providence, RI 02903 and the US Probation Office Kennedy Plaza, Post office Bldg., 3rd Floor Providence, RI 02903 on this 30th day of May 2007.

Felipe Almonte.